Mancari v. Berryhill is the next case for argument. Mr. Parasio. May it please the court, Anthony Parasio on behalf of the plaintiff appellant. The case before the court raises the issue of constitutionality of 42 U.S.C. 402 N or 202 N of the Social Security Act. The argument here is about the disparate treatment that Mr. Mancari has received in light of his circumstances. And again, I want to point out at the very beginning that the facts are not really disputed in terms of what happened either in the... Was he a U.S. citizen at any point? He was a United States citizen for 49 years. Citizen or resident? He came here when he was 8 years old, citizen, citizen of the United States. When was he naturalized? He was denaturalized in 2007 following a conviction. The government has told us he was a lawful permanent resident. He was denaturalized and deported. Do we have a record of citizenship? Yes. The appellee's brief contains an appendix which covers the removal proceedings which took place before an immigration judge, Katsfilas, who issued a ruling to denaturalize and remove Mr. Mancari following... Only a U.S. district judge can do that. My understanding of the facts... And denaturalization is permissible only for fraud in obtaining citizenship. I think it seems very unlikely that your client was a citizen who was denaturalized. Well, he came to the United States in 1958 as an 8-year-old. He married a United States citizen. The obtained citizenship through marriage is my information, although I was not involved... You understand the difference between a lawful permanent resident and a U.S. citizen, right? I do. The question here is not one of whether he was a permanent resident or a United States citizenship. The question here is whether he worked a requisite number of quarters and contributed into the system, which he clearly did for 38 years of his 48 years or 49 years that he was in the United States prior to his removal. And in fact, the Social Security Administration issued a letter upon his application for benefits at the age of 62 stating, in fact, that he qualified and he was entitled to receive old-age benefits. However, because of his residence abroad, he was removed in 2007. He applied in 2012, that his benefits were suspended and he... Not because he's residing abroad, but because of the circumstances of his removal, correct? Correct. Correct. Because he was a convicted felon who served time for possessing an unregistered weapon and, as a result of that, served 40-some months in prison and then was released, after that release, the proceedings before the Immigration Court began for his removal. But again, we're not disputing any of those facts. What we're simply looking at is the continued application of the case law here to this particular set of circumstances involving a person who, as I said, worked a requisite number of quarters who paid into the system for almost 40 years and who then was left with no benefits or either, upon his request, after denial or suspension of benefits for monies that he contributed in excess of $100,000 into the system. He was denied all relief and both the administrative law judge as well as the district court judge relied on a United States Supreme Court case, Fleming v. Nestor, which was, as we argue in our brief, issued by the United States Supreme Court in 1960. We are now almost over half a century after Fleming v. Nestor ruling. So it doesn't count anymore? No, it's still law, obviously. What we're arguing, Judge, is that the continued reliance on Fleming v. Nestor is misplaced under the circumstances that have changed in the world and in the United States generally. You must have been here for the earlier case where we reminded counsel that decisions of the Supreme Court are binding unless the justices themselves overrule them. Has Fleming been overruled? Has not. Then it's binding on us. I agree. It's really simple. The world may have changed. The internet may have been invented. A lot of things have changed. I understand. But Fleming v. Nestor has not been overruled. Well, you know, at one point segregation by race in school. Fleming v. Nestor has not been overruled. Completely agree. You can file a cert petition asking the justices to overrule it. Correct. But we can't ignore it. It is binding on us. I agree with you, Judge. I agree with you. But you're asking us to ignore it. No, I'm not asking you to ignore it. I'm asking you to reverse and remand the ruling by the district court judge. But I do understand and I do concede that Fleming v. Nestor has not been overturned since 1960. We have also cited the Lynch case, which shows the distinction. We can go into the issue whether these were private contractual rights or, you know. Do you think Congress could raise the retirement age for Social Security? It can't. Why can't it do this? Well, what Congress cannot do is act in an unconstitutional manner. That's the conclusion. Right. What's unconstitutional about this if it's not the kind of private property right that can't be affected by, for example, raising the retirement age? Congress has the authority to, as an equal, co-equal branch of government, pass laws. The court, the judiciary, has the, as a co-equal branch, the right to determine whether those laws enacted by Congress and signed by the President are, in fact, in keeping with the United States Constitution. And simply what we argue here is that the disparate treatment afforded to Mr. McCary violates the Fifth Amendment. That very argument was made in Fleming. The due process argument was made in Fleming and the justices rejected it. I'm not disputing that. Well.  And there we are. So, yes. I will reserve my time unless there are some other questions. Okay, thank you.  Good morning. May it please the Court. Kristen Meadows on behalf of the appellee, the Acting Commissioner of the Social Security Administration. Your Honors, I want to start with the issue that you raised regarding citizenship. And there's absolutely no evidence in the record that Mr. McCary was ever a United States citizen. If you looked at a hearing transcript with the ALJ, the appellant didn't testify himself because his attorney said that the facts were not in question. But his attorney referred to him as a legal resident alien on page 90 of the transcript. It was only at the district court level that he started referring to him as someone who obtained citizenship at some point, without giving any reference to where that was coming from. And if you look at page 5 of the Immigration Court. Presumably, if he was ever a citizen, he is still a citizen. Right. And there's no evidence that he was denaturalized, and there's no evidence of that either. Post-naturalization crime, no matter how serious, is not a basis for denaturalization. Correct. Right? So if he was ever a citizen, he is still a citizen, and this statute doesn't apply. We don't have any argument that I can see that 402 N1A is inapplicable because Mankari is a citizen. Correct. And there is no evidence that he was ever a citizen or that he was ever denaturalized. Page 5 of the Immigration Judge Order in our appendix does refer to him as a legal permanent resident, and that was the order ordering him deported. And at that time, he was still a legal permanent resident, and he had been throughout his time in the United States. So there's simply no evidence that he was ever a citizen. And, indeed, he was an LPR or a green card holder. Another issue, as your honors addressed, is that this case does not involve any novel issues. Appellant challenges Section 202 N of the Social Security Act, but the Supreme Court are going to – You're not going to have to persuade us that flamming against Nestor is binding on us. Appellant admits that this is a binding case, and really the inquiry could stop there. But even if it didn't, the decisions of Congress that Appellant challenges are entitled to a strong presumption of constitutionality, and Appellant has not overcome that strong presumption. Congress's choices that are at issue here are examined under the rational basis review test, and Appellant has failed to show that Congress's choices were passionately arbitrary and utterly lacking in rational justification. He had the burden to negate every conceivable basis that could support Section 202 N, and he has not met that burden. This is, turning back to the issue that he was a legal permanent resident, that's an important distinction because it's well settled that the Supreme Court has settled that Congress may treat aliens differently than citizens, and Appellant was never a citizen. Here, Appellant also concedes a number of key differences between himself and the other groups he identifies in his equal protection claims. He admits he was deported, he admits that the deportation was due to his criminal convictions, and he admits that he was ordered deported. He did not voluntarily choose to leave the United States. He was under an order of deportation. So his equal protection claims really have no basis because he admits he's not similarly situated to the other groups that he identifies, and because there were numerous possible rational basis for the distinctions between the groups that he identifies. Again, the takings clause argument, I believe, is foreclosed by Fleming v. Nassar. I won't belabor that unless the court has any questions on the takings clause issue. Regarding the due process claim, again, we have... You really do not need to re-argue Fleming v. Nassar. Right. This has been decided. Sure, and the due process claim, also Matthews v. Eldridge, again, is binding precedent, which, as you know, was a case also involving Social Security benefits. In that instance, disability claims versus retirement claims, but the Matthews v. Eldridge court looked to the routine nature of disability cases, but retirement cases are really even more routine in nature. All you're really looking at here is an individual's age, their earnings record, and whether they had... I don't understand this to be a challenge to the processes used. He did raise a due process claim. Again, we believe that that's also well settled. I do, too. Then unless the court has any other questions, we'd ask that the court affirm the decision of the acting commissioner. Thank you, counsel. Anything further? Nothing further. We'll rest on hundreds. Thank you very much. The case is taken under advisement.